**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **C. PELFRESNE, Trustee Under Illinois**<br>**Land Trust No. 25, Dated May 29, 1998,**<br><br>      **Plaintiff,**<br><br>      **v.**<br><br>**VILLAGE OF LINDENHURST, an Illinois**<br>**municipal corporation, et al.,**<br><br>      **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **No. 03 C 6905**<br><br>**Judge Rebecca R. Pallmeyer** |

**MEMORANDUM OPINION AND ORDER**

This dispute arises from the removal and relocation of a 1,000-foot portion of road that was situated along the edge of property owned by Plaintiff C. Pelfresne in the Village of Lindenhurst, Illinois. The Village approved a petition by other local property owners to remove and relocate the road in connection with a plan to create a single-family development and an adjacent 3.45-acre commercial development. As a result, Plaintiff lost access to the road and filed this lawsuit on September 30, 2003 seeking declaratory and injunctive relief and compensation for the loss of his property value. Plaintiff initially asserted claims of restraint of trade, trespass, private nuisance, and civil conspiracy against the following Defendants: real estate developers Nature's Ridge-Lindenhurst, LLC, Zale Equities, Inc., Zale Equities, LLC, Zale Group, Inc., and Leon Joffe (collectively, the "Zale Defendants"); LaSalle Bank National Association ("LaSalle"); and the Village, Village Trustees Ken Czyzewicz, Mark Federman, Mary McCarthy, Fred Messmer, Carl Norlin, Barbara Stout, Pat Dunham, and Carol Zerba, Village President Paul Baumunk, and Village Administrator James Stevens (collectively, the "Village Defendants").

The Zale Defendants and the Village Defendants filed separate motions to dismiss the complaint, which the court granted in part and denied in part on July 23, 2004. *Pelfresne v. Village of Lindenhurst*, No. 03 C 6905, 2004 WL 1660812 (N.D. Ill. July 23, 2004). On September 7, 2004,

Plaintiff filed an Amended Complaint seeking to remedy the deficiencies in the original complaint, and adding real estate development companies KB Home and KB Home Illinois, Inc. (collectively, the "KB Defendants"), and Gordon White as Defendants. The Zale and KB Defendants and the Village Defendants again move for dismissal of the Amended Complaint on a number of grounds. For the reasons set forth below, the Zale and KB Defendants' motion is granted in part and denied in part, and the Village Defendants' motion is granted.

## BACKGROUND

The facts of this case as set forth in the court's July 23, 2004 Memorandum Opinion and Order are largely repeated in the Amended Complaint. See *Pelfresne*, 2004 WL 1660812, at *1-5. This opinion assumes the reader's familiarity with the earlier decision and recites the relevant facts here only briefly.

### A.    The Parties

Plaintiff is a Michigan-based real estate developer who owns a Trust holding approximately 100 acres of land located on what was formerly the northeast corner of Savage Road and Grass Lake Road in unincorporated Lake County, Illinois. (Cmplt. ¶¶ 1, 2.)[1] Prior to its removal, Savage Road ran east-west and intersected Grass Lake Road, which runs northwest-southeast, at approximately a 45-degree angle. (Ex. A to Cmplt.)

The Village is an Illinois municipal corporation located in Lake County, Illinois. Defendant Paul Baumunk is a citizen and resident of Illinois who served as President of the Village from April 1999 through April 2003. (Cmplt. ¶¶ 3, 12.) Defendants Ken Czyzewicz, Mark Federman, Mary McCarthy, Fred Messmer, Carl Norlin, Barbara Stout, Pat Dunham, and Carol Zerba (collectively, the "Village Trustees") are current or former Trustees of the Village. All are residents and citizens

---

[1]     The Amended Complaint is cited as "Cmplt. ¶ __." As noted earlier, the court is uncertain of the relationship, if any, among Plaintiff "C. Pelfresne" and other Pelfresnes who have filed similar complaints involving other Illinois municipalities.

2

of Illinois. (*Id.* ¶ 13.) Defendant James B. Stevens is also a resident and citizen of Illinois who serves as Village Administrator. (*Id.* ¶ 14.)

Defendant Zale Equities, LLC ("Zale LLC") conducted real estate development and related activities as an Illinois limited liability company until it was involuntarily dissolved on October 31, 2002. Prior to its dissolution, Zale LLC's principal place of business was in Lake County, Illinois, and its former members – Edward Zale, Roberta Zale, Amy Joffe, Melissa Norris, and Leon Joffe – are all citizens of Illinois.[2] (*Id.* ¶ 5.) Defendants Zale Equities, Inc. and Zale Group, Inc. were Illinois real estate development corporations with principal places of business in Lake County, Illinois. Zale Equities was involuntarily dissolved on September 2, 2003, and Zale Group was involuntarily dissolved on November 1, 2000.[3] (*Id.* ¶¶ 4, 6.) Defendant Zale Enterprises, Inc., an Illinois corporation with is principal place of business in Lake County, Illinois, conducts real estate development and related activities in Lake and Cook Counties in Illinois. (*Id.* ¶ 7.)

Defendant Nature's Ridge-Lindenhurst, LLC ("NRL") is in the business of owning, developing, and marketing real estate in Lindenhurst, Illinois. NRL is an Illinois limited liability company with its principal place of business in Lake County, and its members – Edward Zale, Roberta Zale, Amy Joffe, Melissa Norris, and Leon Joffe – are all citizens of Illinois. (*Id.* ¶ 8.) Defendant LaSalle Bank National Association is a national banking association with its principal place of business in Chicago, Illinois. (*Id.* ¶ 9.) Defendant Leon Joffe, a resident and citizen of Illinois, is in the business of developing and marketing real estate in Lake and Cook Counties "[t]hrough Zale Equities, Zale LLC, Zale Group, Zale Enterprises, NRL, [LaSalle], and other entities." (*Id.* ¶ 10.)

---

[2]    The Complaint does not provide an explanation for the involuntary dissolution.

[3]    Again, the Complaint does not explain why these companies were voluntarily dissolved or who initiated those proceedings.

3

Defendants KB Home and KB Home Illinois, Inc. are Delaware corporations with their principal places of business in Los Angeles, California. The KB Defendants conduct real estate and related activities in, among other places, Lake County, Illinois. (*Id.* ¶¶ 15, 16.) On or about September 5, 2003, the KB Defendants acquired the assets of the Zale Defendants. (*Id.* ¶ 36.) Gordon White is in the business of developing and marketing real estate in Lake and Cook Counties "[t]hrough Zale Equities, Zale LLC, Zale Group, Zale Enterprises, NRL, [LaSalle], KB Home, KB Illinois, and other entities." He is a citizen and resident of Illinois. (*Id.* ¶ 11.)

## B. The Savage Road Dispute

At some point prior to April 19, 2000, either the Zale Defendants or LaSalle purchased or contracted to purchase approximately 80 acres of land then located at the southeast corner of Savage Road and Grass Lake Road in unincorporated Lake County, Illinois. On an unspecified date, LaSalle became owner in fee simple title of that property, "with one or more of the . . . Zale Defendants owning the beneficial interest." (*Id.* ¶¶ 9, 19.) LaSalle and the Zale Defendants intended to develop the property as a single-family development to be known as "Nature's Ridge," with a 3.45-acre commercial development in the northeast corner of the property (collectively, "Nature's Ridge"). To that end, "[o]ne or more of the [LaSalle or the] Zale Defendants had filed petitions and other documents with the Village . . . to annex the Nature's Ridge property under the terms of a proposed annexation agreement." The proposed agreement required the Village to rezone the Nature's Ridge property for the planned residential and commercial purposes. (*Id.* ¶¶ 21, 22.) It also called for the removal of Savage Road from its 45-degree intersection with Grass Lake Road to a point at least 1,000 feet east of that intersection, and replacing it with a section of road that curved south to form a 90-degree T-shaped intersection with Grass Lake Road. (*Id.* ¶ 27.) (*See* Map, attached as Exhibit A.) *See also Pelfresne*, 2004 WL 1660812, at *1.

On April 19, 2000, the Village Plan Commission held a hearing regarding the proposed development plan. (*Id.* ¶ 23.) Sometime thereafter, over objection from an attorney for the Trust (owned by Plaintiff), the Village and the Village Trustees approved both the rezoning and the relocation of Savage Road. (*Id.* ¶¶ 25, 27.) In late 2002, "one or more of [the LaSalle or] Zale Defendants" effected the plan described above, and Plaintiff, whose property abutted Savage Road prior to its relocation, lost all access to that road. (*Id.* ¶ 29.) Plaintiff claims that Defendants sought unsuccessfully to purchase his property sometime "in the past," and that they removed the road to "drive down the value of Plaintiff's property in the hope that they can some day purchase the property for less and in retaliation for Plaintiff's refusal to sell to these defendants." (*Id.* ¶¶ 31, 32.)

## C.    The Complaint

On September 30, 2003, Plaintiff filed suit against the Zale Defendants, LaSalle, and the Village Defendants. Count I alleged that all Defendants failed to take any of the steps required by § 11-91-1 of the Illinois Municipal Code, 65 ILCS 5/11-91-1, including public notice, a public hearing, passage of a Village ordinance by three-fourths vote of the Village Board of Trustees, or payment of just compensation to landowners who lost frontage onto Savage Road. *Pelfresne*, 2004 WL 1660812, at *2. Plaintiff sought a declaration pursuant to 28 U.S.C. § 2201 that the Village did not properly vacate Savage Road, that Plaintiff has a right of access to Savage Road in its original location, that the Village Defendants improperly consented to the unlawful removal of Savage Road, that the Zale Defendants were without authority to remove Savage Road, and that the Village Defendants were without authority to vacate Savage Road. *Id.* Plaintiff also sought a preliminary and permanent injunction under FED. R. CIV. P. 65 requiring Defendants to restore Savage Road to its previous condition and location, and prohibiting further development along the relocated portion of Savage Road. *Id.*

Count II, titled "Inverse Condemnation," asserted that by closing the road, the Village Defendants damaged Plaintiff's property for public use without just compensation as required by Article I, § 15 of the Illinois Constitution. According to Plaintiff, "the value of his property has substantially depreciated in fair cash market value" in an amount greater than $75,000 as a result of the roadway's removal. *Id.* at *3. In Count III, asserted only against the Village, Plaintiff sought reimbursement under 65 ILCS 5/11-9-1 for the depreciation in the fair market value of his property, and for the deprivation of his access to and frontage on Savage Road. *Id.*

In Count IV, Plaintiff alleged that all Defendants violated § 1 of the Sherman Act, 15 U.S.C. § 1, as they "agreed, combined, and conspired" to annex the Nature's Ridge property and to relocate Savage Road in restraint of trade and commerce in the Lindenhurst area real estate market beginning in early 2000. Count V alleged that all Defendants willfully, wantonly, and knowingly entered into an agreement to remove and relocate Savage Road without following the procedures set forth in 65 ILCS 5/11-91-1, *et seq.*, and that each Defendant "committed one or more tortious acts in furtherance of the conspiracy, including but not limited to trespass, private nuisance, and restraint of trade and commerce." *Id.* Count VI asserted that Defendants' "improper removal of Savage Road interfered with [Plaintiff's] property right in and use of the access to Savage Road and constitutes an unlawful trespass," resulting in substantial loss in the property's value. Finally, Plaintiff alleged in Count VII that Defendants' "improper removal of Savage Road has eliminated [Plaintiff's] right of access to and frontage on Savage Road and has therefore caused an unreasonable interference with the use and enjoyment of [Plaintiff's] property." *Id.* Notably, Plaintiff did not allege a claim for the taking of his property without just compensation, perhaps because Plaintiff has not yet exhausted his state procedural remedies. *See Sprint Spectrum L.P. v. City of Carmel*, 361 F.3d 998, 1003-04 (7th Cir. 2004) ("a property owner must exhaust all available state remedies for compensation prior to bringing a taking claim to federal

court.")[4]

**D.    The July 23, 2004 Opinion**

The Zale Defendants and the Village Defendants separately moved to dismiss the complaint for lack of standing and failure to state a claim. In its July 23, 2004 Memorandum Opinion and Order, the court first determined that Plaintiff has standing to sue for relief based on his allegation that his property value has declined. The court noted, however, that "[i]f during the discovery process Defendants can demonstrate that the fair market value of Plaintiff's property has not decreased, . . . the court will entertain motions to dismiss pursuant to Rule 12(b)(1), as well as for sanctions against Plaintiff." *Id.* at *6.

The court next upheld Plaintiff's claim for declaratory relief in Count I, but dismissed his claim for injunctive relief due to his failure to satisfy the court that his alleged injuries could not be compensated with money damages. *Id.* at *7-9. With respect to Count II alleging "Inverse Condemnation," the court held that Plaintiff stated a valid claim for damage under Article I, § 15 of the Illinois Constitution, again based on his allegation that his property value has substantially depreciated. Plaintiff could not, however, assert that claim against any of the individual Village Defendants. *Id.* at *10-11.

The court rejected the Village Defendants' argument for dismissing Count III on the grounds that Plaintiff has an easement for "ingress and egress of farm implement vehicles and supporting vehicles." In the court's view, there was a question of fact as to whether the easement provided Plaintiff with adequate substitute access to Savage Road. *Id.* at *12. The court, however, dismissed Plaintiff's Sherman Act claim without prejudice; Plaintiff's assertions that his own property value had decreased but that the Lindenhurst real estate market generally had increased

---

[4]    The court understands that at least some Defendants may be willing to compensate Plaintiff for the diminution in value of his property as a result of the relocation of Savage Road. Yet Plaintiff has been puzzlingly reluctant to disclose the results of an appraisal to ascertain the amount of that loss.

were inconsistent and, in the court's view, defeated the allegation that Defendants' actions had anticompetitive effects. *Id.* at *14. The court also dismissed Counts VI and VII for failure to allege any physical invasion of property as required to state claims for trespass and private nuisance. *Id.* at *14-16. Having dismissed Plaintiff's underlying tort claims (trespass, private nuisance, and restraint of trade and commerce), the court dismissed Plaintiff's civil conspiracy claim (Count V) as well. *Id.* at *16 (citing *Fritz v. Johnston*, 209 Ill. 2d 302, 317, 807 N.E.2d 461, 470 (2004) (requiring that conspirators commit a tortious or unlawful act in furtherance of the conspiracy)).

## E.     The Amended Complaint

On September 3, 2004, Plaintiff filed an Amended Complaint seeking to remedy the deficiencies identified in the original complaint, and adding the KB Defendants and Gordon White as Defendants. Once again, Plaintiff's most logical claim – unlawful taking – appears nowhere in the Complaint. Nor has he provided any information as to the amount by which his property has been devalued by the relocation of Savage Road. Plaintiff instead advances the following theories of relief.

Count I seeks declaratory relief for Defendants' failure to take any of the steps required by § 11-91-1 of the Illinois Municipal Code, 65 ILCS 5/11-91-1, including public notice, a public hearing, passage of a Village ordinance by three-fourths vote of the Village Board of Trustees, or payment of just compensation to landowners who lost frontage onto Savage Road. (Cmplt. ¶¶ 35, 40.) Count II charges the Village with violating Article I, § 15 of the Illinois Constitution by taking Plaintiff's property without just compensation. (*Id.* ¶ 42.) In Count III, Plaintiff seeks damages from the Village under 65 ILCS 5/11-9-1 for the depreciation in the fair market value of his property, and for the deprivation of his access to and frontage on Savage Road. (*Id.* ¶¶ 48-52.)

Count IV asserts that Defendants violated § 1 of the Sherman Act by conspiring to "unreasonably restrain[] competition for the sale and development of real estate" in the Lindenhurst

8

area and to preclude Plaintiff and other developers "from fully competing with the Zale Defendants and the KB Defendants for the sale and development of medium to high-density mixed-use property." (*Id.* ¶¶ 59, 62.) These actions, Plaintiff claims, have restricted competition and limited consumer choice in the Lindenhurst area, and have "caused or reasonably will cause increased prices for purchasers and consumers of both residential and commercial real estate in the relevant market." (*Id.* ¶¶ 64, 65.)

In Count V, Plaintiff alleges that the Zale and KB Defendants have been unjustly enriched by the relocation of Savage Road. (*Id.* ¶¶ 70-72.) Count VI charges the Zale Defendants, the KB Defendants, Joffe, and White with tortious interference with Plaintiff's prospective economic advantage "from the eventual development and sale of [his] property." (*Id.* ¶ 74.) Count VII alleges that the Zale Defendants, Joffe, and White "willfully, maliciously, intentionally, and unlawfully interfered with and impaired Plaintiff's property right by unlawfully removing Savage Road and relocating it onto the Zale Defendants' property." (*Id.* ¶ 81.) Count VII further alleges that the KB Defendants "willfully, maliciously, and intentionally aided, abetted, and assisted with the interference with and impairment of Plaintiff's property rights by acting to cement and retaining the Zale Defendants' and KB Defendants' exclusive access to and control over the relocated portion of Savage Road and its frontage." (*Id.* ¶ 82.) Finally, Count VIII charges all Defendants with civil conspiracy. (*Id.* ¶¶ 86-89.)

The Zale and KB Defendants have moved to dismiss all claims against them, and the Village Defendants seek dismissal of Counts I, IV, and VIII. The court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and considers each motion below.

## DISCUSSION

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A motion to

dismiss will be granted only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitles him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In reviewing a motion to dismiss for failure to state a claim, the court accepts as true all factual allegations in the plaintiff's complaint and draws all reasonable inferences in his favor. *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 770 (7th Cir. 2002).

The Zale, KB, and Village Defendants all move to dismiss Count I as duplicative of Count III. The Village Defendants also claim that they are immune from liability under the Sherman Act (Count IV) pursuant to *Parker v. Brown*, 317 U.S. 341, 352 (1943), and that they are absolutely immune from liability for civil conspiracy (Count VIII) under the Illinois Tort Immunity Act, 745 ILCS 10/1-101 *et seq*. The Zale and KB Defendants insist that there is no public injury to support Plaintiff's Sherman Act claim, and that Plaintiff has not properly alleged claims for unjust enrichment, tortious interference, malicious injury to property, or civil conspiracy.

**I.    Count I**

In Count I of the Amended Complaint, Plaintiff seeks a declaration pursuant to 28 U.S.C. § 2201 that the Village did not properly vacate Savage Road, that Plaintiff has a right of access to Savage Road in its original location, that the Village Defendants improperly consented to the unlawful removal of Savage Road, that the Zale and KB Defendants were without authority to remove Savage Road, and that the Village Defendants were without authority to vacate Savage Road. (Cmplt. ¶ 40.) The Zale, KB, and Village Defendants all insist that this claim is duplicative of Count III, which seeks money damages from the Village under 65 ILCS 5/11-91-1 for the property damage caused by the relocation of Savage Road. (Zale/KB Mem., at 2; Village Mem., at 7[5] (citing *Green Bay Packaging, Inc. v. Hoganson & Assocs., Inc.*, 362 F. Supp. 78, 82 (N.D. Ill.

---

[5]    The Zale Defendants' and KB Defendants' Motion to Dismiss Plaintiff's Amended Complaint is cited as "Zale/KB Mem., at __." The Memorandum of Village of Lindenhurst Defendants in Support of their Motion to Dismiss Counts I, IV, and VIII of the Amended Complaint is cited as "Village Mem., at __."

1973) (striking as duplicative two counterclaims alleging breach of an oral contract where the complaint sought declaratory relief as to the contractual rights of the parties).)

"The purposes of declaratory judgments are to 'clarify[] and settl[e] the legal relations at issue' and to 'terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002) (quoting *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987)). "Where the substantive suit would resolve the issues raised by the declaratory judgment action, the declaratory judgment action 'serve[s] no useful purpose' because the controversy has 'ripened' and the anticipation and uncertainty of litigation are alleviated." *Id.* In this case, Plaintiff has filed a lawsuit seeking damages caused by Defendants' unlawful relocation of a portion of Savage Road. Plaintiff thus has no need for a declaratory judgment establishing the same unlawful conduct. *See Dixie Gas & Food, Inc. v. Shell Oil Co.*, No. 03 C 8210, 2005 WL 1273273, at *7 (N.D. Ill. May 25, 2005) ("the process for determination on the merits is underway in this suit, and the additional declaratory judgment action requested by plaintiffs is redundant.")

Plaintiff disagrees that the relief requested in Count I is "entirely duplicative" of the relief requested in other counts, noting that he seeks "a declaration that he has a right of access to 650 feet of frontage on Savage Road in its original location, and that the Village Defendants are without authority to vacate Savage Road." (Pl. Resp., at 13-14.)[6] As Defendants note, however, the court already rejected Plaintiff's claim for injunctive relief requiring the relocation of Savage Road to its

---

[6]     Plaintiff C. Pelfresne's Response to Defendants' Motions to Dismiss is cited as "Pl. Resp., at __."

original location. (Zale/KB Reply, at 6.)[7] *Pelfresne*, 2004 WL 1660812, at *8-9. Defendants' motion to dismiss Count I as duplicative is granted.[8]

## II.     Count IV

Defendants next argue that Plaintiff's Sherman Act claim once again fails because he has alleged neither a personal nor a public injury. The Village Defendants also claim immunity from liability under *Parker v. Brown*, 317 U.S. 341 (1943).

### A.     The Zale and KB Defendants

To state a claim for relief under § 1, Plaintiff must allege "either that the contract, combination, or conspiracy resulted in a *per se* violation of the Sherman Act or that it unreasonably restrained competition in a relevant market." *MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, 62 F.3d 967, 976 (7th Cir. 1995) (citations omitted). As noted, the court previously dismissed Plaintiff's Sherman Act claim for failure to sufficiently allege anticompetitive effects. Specifically, Plaintiff's repeated assertion that his property value had decreased was inconsistent with his claim in Count IV that consumers were being injured by the fact that prices in the Lindenhurst real estate market had increased. *Pelfresne*, 2004 WL 1660812, at *14. Plaintiff contends that the Amended Complaint now alleges at least three types of injury to competition: (1) a reduction in supply or output; (2) increased prices; and (3) a reduction in the quality and quantity of consumer choice. (Pl. Resp., at 3.) Plaintiff's theory is as follows: The Lindenhurst market "is characterized by a small and continually shrinking supply of remaining undeveloped properties with the potential for development as medium to high-density mixed-use developments, and a relatively strong and

---

[7]     The Zale and KB Defendants' Reply in Support of the Zale and KB Defendants' Motion to Dismiss the Plaintiff's Amended Complaint is cited as "Zale/KB Reply, at __."

[8]     Plaintiff notes that this court previously upheld his claim for declaratory judgment. (Pl. Resp., at 13.) *See Pelfresne*, 2004 WL 1660812, at *7-8. In addressing the previous motions to dismiss, however, the court was asked to consider only whether Plaintiff had sufficiently alleged a violation of state law and an injury in fact, and not whether the declaratory judgment and the damages claims were duplicative.

growing demand for such property." (Cmplt. ¶ 55.) The relocation of Savage Road has "removed" Plaintiff's property from the market for medium to high-density mixed-use development because the property is no longer at an intersection and no longer has any frontage on, or useful access to, Savage Road. (Pl. Resp., at 4.) In Plaintiff's view, this has resulted in an output restriction – i.e., a reduction in the supply of property in the relevant market. "Output restrictions are classic per se violations which personify the law of supply because product scarcity causes consumers to pay inflated prices to satisfy demand. Unlike pure supply and demand, competitors use output restrictions to inflate profit by thwarting competition by intentionally limiting product availability." *United States v. Andreas*, 39 F. Supp. 2d 1048, 1059 (N.D. Ill. 1998).

With the reduction in supply of property that may be developed as medium to high-density mixed-use developments, Plaintiff argues, the price to consumers for such property will increase, and the quality and quantity of their property choices will decrease. (Pl. Resp., at 5-6 (citing *MCM Partners*, 62 F.3d at 972 (antitrust claim stated where defendants' conduct allegedly eliminated plaintiff from the market, securing defendants a "virtual monopoly" and allowing them to charge higher rates for rental equipment); *Davis v. First Nat'l Bank of Westville*, 868 F.2d 206, 208 (7th Cir. 1989).) Under this theory, Plaintiff insists, the allegations that the value of his property, which cannot be used for medium to high-density mixed-use developments, has decreased while the price for properties that may be used for medium to high-density mixed-use developments has increased are entirely consistent. (Pl. Resp., at 5.)

The Zale and KB Defendants do not specifically respond to any of these arguments, claiming instead that Plaintiff's theory is flawed because he does not allege any personal injury from the Sherman Act violation. According to Defendants, "the alleged injured class are consumer/developers wishing to develop property in the Lindenhurst area," and Plaintiff does not claim to be one of those consumer/developers. (Zale/KB Reply, at 2 (citing *Metro Cable Co. v. CATV of Rockford, Inc.*, 516 F.2d 220 (7th Cir. 1975).) In *Metro Cable*, the plaintiff applied for but

13

did not receive a franchise from the City of Rockford, Illinois to construct and operate a cable television transmission system. 516 F.2d at 222. The plaintiff sued the company that did obtain the franchise (CATV), its affiliate, and four individuals associated with those companies, alleging that they organized CATV in part to induce the city's mayor and an alderman to oppose the plaintiff's current and future franchise applications. *Id.* at 222-24. The plaintiff argued that this violated the Sherman Act because the defendants formed a plan to block any cable television in Rockford that would compete with their station (WCEE-TV), and organized CATV to secure what was in effect an exclusive franchise "to delay building cable facilities in order to postpone the day when WCEE-TV would have competition from cable television." *Id.* at 232-33.

The court found that the part of the plan consisting of inducing the city council to grant CATV a franchise and deny one to the plaintiff did not fall within the Sherman Act, noting that the *Noerr-Pennington* doctrine protects concerted efforts to induce government to take lawful action. *Id.* at 227, 233 (citing *United Mine Workers of America v. Pennington*, 381 U.S. 657, 670 (1965) (noting that *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), "shields from the Sherman Act a concerted effort to influence public officials regardless of intent of purpose.")) The only injured parties in *Metro Cable* were those "who suffered injury by reason of the delay in establishing a cable television system in Rockford, for example, a distant television station which could only reach Rockford consumers through cable television facilities." *Id.* at 233.

The Zale and KB Defendants appear to be arguing, somewhat obliquely, that they cannot be liable under § 1 of the Sherman Act by virtue of the *Noerr-Pennington* doctrine. Under that doctrine, "parties may petition the government for official action favorable to their interests without fear of suit, even if the result of the petition, if granted, might harm the interests of others." *Tarpley v. Keistler*, 188 F.3d 788, 794 (7th Cir. 1999). *See also Greater Rockford Energy and Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 397 (7th Cir. 1993) ("lobbying that would arguably restrain trade is

14

protected political activity and does not violate the antitrust laws.") That is precisely what Plaintiff has alleged here.

Plaintiff claims that the Zale Defendants conspired with the Village Defendants "to annex the Nature's Ridge property and to remove and relocate Savage Road in restraint of trade and commerce in the market for the sale and development of prime medium to high-density mixed use real estate." (Cmplt. ¶ 57.) Plaintiff also claims that after acquiring the assets of the Zale Defendants, the KB Defendants

> induced and agreed with the Village Defendants to have the Village approve an ordinance purporting to vacate the removed section of Savage Road and took other affirmative steps to ensure the KB Defendants' continual improper and unlawful access to that frontage, to the exclusion of Plaintiff and other landowners.

(Id. ¶ 58.) The Zale and KB Defendants had a right to petition the Village to annex Nature's Ridge and to relocate Savage Road, even though those actions ultimately harmed Plaintiff's interests. Tarpley, 188 F.3d at 794; In re Brand Name Prescription Drugs Antitrust Litig., 186 F.3d 781, 788-89 (7th Cir. 1999) (the Noerr-Pennington doctrine "exempts from antitrust law collusive efforts to obtain governmental protection against the winds of competition.") Notably, there is nothing to suggest that the Zale and KB Defendants' "activities [were] not genuinely aimed at procuring favorable government action." City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 380 (1991) ("A classic example [of the sham exception] is the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay.") The Zale and KB Defendants' motion to dismiss Count IV is granted.

### B.    The Village Defendants

The Village Defendants argue that they are immune from liability under the Sherman Act because their actions in annexing Nature's Ridge and approving the relocation of Savage Road are "authorized implementation[s] of state policy." (Village Mem., at 3 (quoting City of Columbia, 499

U.S. at 371.) In *City of Columbia*, the plaintiff objected to a Columbia, South Carolina ordinance restricting the size, location, and spacing of billboards within the city. The ordinance "obviously benefitted" a favored local company, Columbia Outdoor Advertising, Inc. ("COA"), which "already had its billboards in place," and "severely hindered" the plaintiff's ability to compete. 499 U.S. at 368. The plaintiff filed suit against the City and COA alleging, in part, that the ordinance was the result of "an anticompetitive conspiracy between city officials and COA" in violation of § 1 of the Sherman Act. *Id.* at 369. Reversing a judgment in favor of the plaintiff, the Supreme Court first noted its decision in *Parker v. Brown*, 317 U.S. 341 (1943) that the Sherman Act does "not apply to anticompetitive restraints imposed by the States 'as an act of government.'" *Id.* at 370 (quoting *Parker*, 317 U.S. at 352). The Court confirmed that *Parker* immunity would not protect local governments directly, but recognized that such immunity does apply where "a municipality's restriction of competition [is] an authorized implementation of state policy." *Id.* (citing *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 38 (1985)). For the immunity to apply, however, there must be a "'clear articulation of a state policy to authorize anticompetitive conduct' by the municipality." *Id.* at 372 (quoting *Hallie*, 471 U.S. at 40). This requirement is satisfied "if suppression of competition is the 'foreseeable result' of what the state authorizes." *Id.* (quoting *Hallie*, 471 U.S. at 42).

Applying these principles to the Columbia ordinance, the Court held that "no more is needed to establish, for *Parker* purposes, the city's authority to regulate than its unquestioned zoning power over the size, location, and spacing of billboards." *Id.* The Court further determined that

> [t]he very purpose of zoning regulation is to displace unfettered business freedom in a manner that regularly has the effect of preventing normal acts of competition, particularly on the part of new entrants. A municipal ordinance restricting the size, location, and spacing of billboards (surely a common form of zoning) necessarily protects existing billboards against some competition from newcomers.

*Id.* at 373. As for the plaintiff's invocation of a "conspiracy exception" to *Parker* immunity, the Court reaffirmed its "rejection of any interpretation of the Sherman Act that would allow plaintiffs to look

behind the actions of state sovereigns to base their claims on 'perceived conspiracies to restrain trade.'" *Id.* at 379 (quoting *Hoover v. Ronwin*, 466 U.S. 558, 580 (1984)). The Court therefore found the City immune from liability.

The Village Defendants argue that the Village's authority to enter into annexation agreements (such as the annexation of Nature's Ridge) and to regulate land use, lot size, roads, and other matters necessary for the public health, safety, and welfare (such as the relocation of Savage Road) is established by state law as set forth in the Illinois Municipal Code, 65 ILCS 5/11-15.1-1, 5/11-15.1-2(b), (f), 5/11-91-1.[9] (Village Mem., at 4.) Plaintiff insists that the Village's actions were not authorized by state policy because the Village allowed the Zale and KB Defendants to "remove and relocate Savage Road for Zale's benefit, without following the requirements of state law mandating prior notice and a prior hearing before a road is vacated." (Pl.

---

[9]    Section 11-15.1-1 provides that "[t]he corporate authorities of any municipality may enter into an annexation agreement with one or more of the owners of record of land in unincorporated territory." 65 ILCS 5/11-15.1-1. Section 11-15.1-2 states that an annexation agreement may provide for:

(b)    The continuation in effect, or amendment, or continuation in effect as amended, of any ordinance relating to subdivision controls, zoning, official plan, and building, housing and related restrictions . . . .

* * * *

(f)    Any other matter not inconsistent with the provisions of this Code, nor forbidden by law.

65 ILCS 5/11-15.1-2(b), (f). Section 11-91-1 provides:

Whenever the corporate authorities of any municipality, whether incorporated by special act or under any general law, determine that the public interest will be subserved by vacating any street or alley, or part thereof, within their jurisdiction in any incorporated area, they may vacate that street or alley, or part thereof, by an ordinance.

65 ILCS 5/11-91-1.

Resp., at 6.) As the Village Defendants point out, however, the Supreme Court rejected just such

an argument in *City of Columbia*, where it stated:

> "To be sure, state law 'authorizes' only agency decisions that are substantively and
> procedurally correct. Errors of fact, law, or judgment by the agency are not
> 'authorized.' . . . . We . . . believe, [however], that in order to prevent *Parker* from
> undermining the very interests of federalism it is designed to protect, it is necessary
> to adopt a concept of authority broader than what is applied to determine the legality
> of the municipality's action under state law. . . . . It suffices for the present to
> conclude that here no more is needed to establish, for *Parker* purposes, the city's
> authority to regulate than its unquestioned zoning power over the size, location, and
> spacing of billboards.

499 U.S. at 371-72 (quoting P. Areeda & H. Hovenkamp, Antitrust Law ¶ 212.3b, at 145 (Supp.

1989)). As in *City of Columbia*, the Village has unquestioned authority to annex property and

relocate roads, which suffices as authority for purposes of *Parker* immunity.

Plaintiff argues that *Parker* immunity nonetheless does not apply here because § 11-91-1

"has nothing to do with displacing competition in favor of regulation." (Pl. Resp., at 7.) Noting the

statute's language that "[t]he relief to the public from further burden and responsibility of

maintaining any street or alley, or part thereof, constitutes a public use or public interest authorizing

the vacation," Plaintiff contends that "65 ILCS 5/11-91-1 simply grants authority to municipalities

to vacate roads . . . to relieve the burden on a municipality to maintain the road" and "is not aimed

at replacing competition with regulation." (*Id.* at 8.) The problem with this argument is that an

anticompetitive effect need only be the "foreseeable result," and not the stated aim or purpose of

the statute. As the Supreme Court explained in *City of Columbia*,

> We have rejected the contention that this requirement [authorization of
> anticompetitive conduct] can be met only if the delegating statute explicitly permits
> the displacement of competition . . . . It is enough, we have held, if suppression of
> competition is the "foreseeable result" of what the statute authorizes.

499 U.S. at 372-73 (quoting *Hallie*, 471 U.S. at 41-42).

To be sure, a municipality is not automatically beyond the reach of antitrust laws merely by

virtue of a state delegation of authority. (Pl. Resp., at 8 (citing *Lancaster Community Hosp. v.*

18

*Antelope Valley Hosp. Dist.*, 940 F.2d 397, 400 (9th Cir. 1991) ("The courts must assure themselves that the subordinate [entity] acts in accord with the state's wishes when it contravenes the federal antitrust laws."); *Surgical Care Ctr. of Hammond, L.C. v. Hospital Serv. Dist. No. 1 of Tangipahoa Parish*, 171 F.3d 231, 235 (5th Cir. 1999) (finding that "it is not the foreseeable result of allowing a hospital service district to form joint ventures that it will engage in anticompetitive conduct.").) As with other zoning ordinances, however, the Illinois statute authorizing the removal and relocation of roads has the foreseeable result of placing landowners at an economic disadvantage in connection with the development of their property. The Village Defendants are immune from liability under the Sherman Act and their motion to dismiss Count IV is granted.

### III.    Count V

The Zale and KB Defendants argue that Plaintiff cannot maintain his unjust enrichment claim because he fails to allege that he performed any services for Defendants. Citing *Oncology Therapeutics Network Joint Venture, L.P. v. Olympia Fields Internal Medicine Assocs., S.C.*, No. 01 C 2079, 2003 WL 21087954 (N.D. Ill. May 13, 2003), Defendants contend that the elements of an unjust enrichment claim include: (1) Plaintiff performed services; (2) the benefit of those services was conferred upon Defendants; and (3) it is unjust for Defendants to retain the benefit without compensating Plaintiff. *Id.* at *5. Plaintiff insists that an unjust enrichment claim requires only a showing that (1) Defendants have unjustly retained a benefit to Plaintiff's detriment; and (2) Defendants' retention of the benefit violates the fundamental principles of justice, equity, and good conscience. (Pl. Resp., at 9 (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 160, 545 N.E.2d 672, 679 (1989).)

The court agrees that Plaintiff need not have performed any services for Defendants in order to state a claim for unjust enrichment. The *Oncology Therapeutics* court suggests such a requirement, but the case it relied on, *First Nat'l Bank of Springfield v. Malpractice Research, Inc.*,

179 Ill. 2d 353, 688 N.E.2d 1179 (1997), addressed the elements of a claim for quantum meruit, not unjust enrichment. *Id.* at 365, 688 N.E.2d at 1185. What is clear is that Plaintiff must establish that he furnished some benefit to Defendants "under circumstances which would make it unjust for [Defendants] to retain the benefit without paying." *Hayes Mechanical, Inc. v. First Indus., L.P.*, 351 Ill. App. 3d 1, 9, 812 N.E.2d 419, 426 (1st Dist. 2004). Plaintiff may seek to recover a benefit that he gave directly to Defendants, or one which was transferred to Defendants by a third party. *State Farm General Ins. Co. v. Stewart*, 288 Ill. App. 3d 678, 691, 681 N.E.2d 625, 633 (1st Dist. 1997). To establish that the retention of a benefit conferred upon Defendants by a third-party constitutes an unjust enrichment, Plaintiff must show that "(1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead; (2) the defendant procured the benefit from the third party through some type of wrongful conduct; or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant." *Id.*, 681 N.E.2d at 633-34. *See also HPI Health Care Serv., Inc.*, 131 Ill. 2d at 161-62, 545 N.E.2d at 679.

In this case, Plaintiff does not allege that he directly gave Defendants the benefit of the use of Savage Road. Rather, he suggests that the Zale and KB Defendants received that benefit from the Village, "as the relocation of Savage Road increased the value of the Zale Defendants' and the KB Defendants' property." (Cmplt. ¶ 70.) Plaintiff does not, however, indicate which of the three *State Farm* elements supports his unjust enrichment claim. Plaintiff certainly cannot claim that the benefit "should have been given" to him, as he already had the use of Savage Road prior to its removal and relocation. Nor is there any evidence that the relocation was a "mistake." *See National Am. Ins. Co. v. Indiana Lumbermens Mut. Ins. Co.*, 221 F.3d 1339 (Table) (7th Cir. 2000) (to establish a "mistake," "a plaintiff must point to some unintentional act arising from ignorance, surprise, or misplaced confidence.") To the contrary, the Village both knew about and approved of the relocation, which resulted in Savage Road's meeting Grass Lake Road at a right (and safer) angle.

Plaintiff does allege that the Zale and KB Defendants procured the relocation from the Village "through some type of wrongful conduct" – namely, they conspired to relocate Savage Road to reduce competition and "intentionally drive down the value of Plaintiff's property." (*Id.* ¶¶ 32-34.) To the extent the court has dismissed Plaintiff's Sherman Act claims, however, he has not sufficiently alleged that the Zale and KB Defendants engaged in wrongful conduct in order to secure the relocation of Savage Road from the Village. That leaves the theory that Plaintiff had a better claim to the road than the Zale or KB Defendants. Aside from arguing that the value of his property decreased and that Defendants did not follow proper procedures in relocating Savage Road, however, Plaintiff offers nothing to suggest that his claim to the use of Savage Road was somehow superior to that of Defendants, or that the Village had a duty to maintain the road in its original location. Absent such a showing, Plaintiff cannot maintain a claim for unjust enrichment.

## IV.     Count VI

The Zale and KB Defendants next contend that Plaintiff's claim for tortious interference with prospective economic advantage fails because he does not identify any third party with which he had a reasonable business expectancy. (Zale/KB Mem., at 5.) To state a tortious interference claim, Plaintiff must allege (1) a reasonable expectation of entering into a valid business relationship; (2) Defendants' knowledge of that expectancy; (3) purposeful or intentional interference by Defendants that prevents Plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to Plaintiff resulting from the interference. *Associated Underwriters of Am. Agency, Inc. v. McCarthy*, 356 Ill. App. 3d 1010, 1020, 826 N.E.2d 1160, 1169 (1st Dist. 2005). Numerous Illinois cases have stated that "[a] plaintiff states a cause of action only if he alleges a business expectancy with a specific third party as well as action by the defendant directed towards that third party." *Id. See also Solaia Technology, LLC v. Specialty Pub. Co.*, 357 Ill. App. 3d 1, 826 N.E.2d 1208 (1st Dist. 2005) (collecting cases) (affirming dismissal of tortious

interference claim where the plaintiffs failed to allege that "specific third parties actually *contemplated* entering into a business relationship with plaintiffs.") (emphasis in original).

Plaintiff argues that such specificity is not required to state a claim in federal court, which follows a liberal notice pleading standard. *See Kyle v. Morton High Sch.*, 144 F.3d 448, 454 (7th Cir. 1998) ("Under the federal rule of notice pleading, 'all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.") (internal quotations omitted). In *Cook v. Winfrey*, 141 F.3d 322 (7th Cir. 1998), for example, the plaintiff wanted to sell the tabloid press his story about how national celebrity Oprah Winfrey had used cocaine while they were involved in a romantic relationship. *Id.* at 324. When Winfrey preempted him by revealing the drug abuse herself on her nationally syndicated television program, the plaintiff charged Winfrey with, among other things, tortiously interfering with his "ability to enter into contracts or business relationships with third parties interested in purchasing the rights to publication of his experiences." *Id.* at 324, 328.

The district court dismissed the claim because the plaintiff "did not name any particular third party with whom he had a reasonable expectation of a business relationship, or toward whom Winfrey directed her interfering actions." *Id.* at 327-28. The Seventh Circuit reversed, however, holding that "[t]he Federal Rules do not require that [a] complaint allege the specific third party or class of third parties with whom [the plaintiff] claims to have had a valid business expectancy." *Id.* at 328. As the court explained, "[a] Rule 12(b)(6) motion cannot be used to dismiss a complaint on the ground that it does not include information that Rule 8 does not require it to contain." *Id.* *See also Kim v. Kim*, 360 F. Supp. 2d 897, 905 (N.D. Ill. 2005).

In this case, Plaintiff alleges that he "had a reasonable expectation of entering into a valid business relationship for the development [and sale] of [his] property." (Cmplt. ¶ 74.) The Zale and KB Defendants argue that this does not suffice to allege that Defendants "acted toward a third party," perhaps because Plaintiff incorrectly identifies the Village Defendants as those third parties.

22

(Zale/KB Reply, at 5; Pl. Resp., at 10.) In fact, Plaintiff's claimed expectation of entering into a business relationship with persons interested in purchasing and developing his property is adequate to allege a claim for tortious interference with prospective economic advantage. (Cmplt. ¶¶ 74, 76 (alleging that Defendants "purpose[ly] and intentional[ly] interfere[d] with Plaintiff's business expectancy).) The Zale and KB Defendants' motion to dismiss Count VI is denied.

## V.    Count VII

In Count VII, Plaintiff alleges that the Zale and KB Defendants aided and abetted the "impairment of Plaintiff's property rights." The Zale and KB Defendants urge the court to dismiss Count VII on the grounds that Illinois does not recognize a claim for malicious injury to property rights. (Zale/KB Mem., at 6 (citing *Shields Enterprises, Inc. v. First Chicago Corp.*, No. 86 C 10213, 1987 WL 18356 (N.D. Ill. Oct. 7, 1987).) The plaintiff in *Shields Enterprises* sought to pursue a malicious injury to property rights action, relying on two cases that only vaguely referred to such a tort: *Doremus v. Hennessy*, 176 Ill. 608, 52 N.E. 924 (1898), and *Robinson v. Lull*, 145 F. Supp. 134 (N.D. Ill. 1956). In *Doremus*, defendants, who performed services for the plaintiff's laundry business, conspired to put her out of business unless she raised her prices. Recognizing a cause of action in these circumstances, the court stated, in dicta, the following general principle of law:

> Every man has a right, under the law, as between himself and others, to full freedom in disposing of his own labor or capital according to his own will, and any one who invades that right without lawful cause or justification commits a legal wrong; and, if followed by an injury caused in consequence thereof, the one whose right is thus invaded has a legal ground of action for such wrong.

176 Ill. at 615, 52 N.E. at 926.

In *Robinson*, defendants expelled plaintiff, a physician, from a local medical society on false charges, thereby destroying his practice. The court described the plaintiff's resulting complaint as "stat[ing] a cause of action in tort, alleging an intentional and wrongful invasion of plaintiff's right to establish and conduct a lawful business." 145 F. Supp. at 138. The *Robinson* court noted,

23

however, that the complaint was inartfully drafted and that the action was actually based on an alleged violation of the medical society's by-laws. *Id.* After reviewing these two cases, the *Shields Enterprises* court (which did not describe the facts of the cases before it) dismissed the plaintiff's malicious injury to property claim, explaining that "[t]his Court cannot say with any certainty that the Illinois Supreme Court would find that a cause of action existed here based on an unclear 1956 federal district court case and on dicta expounded in 1898." 1987 WL 18356, at *4.

Plaintiff maintains that a number of other Illinois Appellate Courts have in fact recognized a cause of action for malicious injury to property. In *Pendleton v. Time, Inc.*, 339 Ill. App. 188, 89 N.E.2d 435 (1st Dist. 1949), the plaintiff was an artist who painted the first portrait of Harry S. Truman before he became the President of the United States. After Truman became President, Time published a portrait of Truman painted by artist Jay Wesley Jacobs, falsely characterizing the painting as the first portrait for which Truman had ever sat. *Id.* at 190-93, 89 N.E.2d at 436-37. The plaintiff sued Time, alleging that he "lost all benefit and advantage accruing to him by reason of his having made and executed the first portrait of said Harry S. Truman," and that he "was further made to appear as stating an untruth in his prior statements of and concerning his having made the first portrait of the said Harry S. Truman." *Id.* at 193, 89 N.E.2d at 437. The court found that the plaintiff had alleged a property right in the value attained in painting the "first" portrait of Truman, and that there must be a remedy afforded for the willful, malicious, and intentional injury to that property right. *Id.* at 194-95, 89 N.E.2d at 438.

Contrary to Plaintiff's suggestion, *Pendleton* does not affirmatively recognize a claim for malicious injury to property. As with *Doremus*, *Pendleton* recognizes the general principle of law that every man has the right to dispose of his own labor or capital according to his own will. Nor is Plaintiff's reliance on *Renard v. Columbia Broad. Sys., Inc.*, 126 Ill. App. 3d 563, 467 N.E.2d 1090 (1st Dist. 1984), helpful; that case merely noted that the trial court had dismissed the plaintiff's cause of action for malicious injury to property rights, and on appeal addressed only the plaintiff's

24

claim for libel. *Id.* at 566, 467 N.E.2d at 1093. In *Nemanich v. Long Grove Country Club Estates, Inc.*, 119 Ill. App. 2d 169, 255 N.E.2d 466 (2d Dist. 1970), the court noted the case of *Ammons v. Jet Credit Sales, Inc.*, 34 Ill. App. 2d 456, 181 N.E. 2d 601 (1st Dist. 1962), in which the court "expressed favor with a count based on malicious and wrongful impairment of property in that the plaintiff's employment was jeopardized and credit impaired as a result of the defendant's action [making a garnishment demand on the plaintiff's employer] but affirmed the trial court on the basis that the demand was void on its face and not actionable." *Id.* at 175-76, 255 N.E.2d at 469. The *Nemanich* court stated that "[t]he tort of malicious and wrongful impairment of property, like any other tort, must be based on the commission of a civil wrong," but dismissed the claim for failure to allege that the defendants had committed any such wrong. *Id.* at 176, 255 N.E.2d at 469.

The court does not believe that any of these cases supports Plaintiff's claim for malicious impairment of property rights, and has serious doubts as to the validity of any such claim under Illinois law. As the *Shields Enterprises* court noted, "one must go back over thirty years to find even the briefest mention of the issue in Illinois . . ." 1987 WL 18356, at *4. Even assuming such a tort did exist, moreover, there is nothing to suggest that Defendants committed a civil wrong necessary to support the claim. The Zale and KB Defendants' motion to dismiss Count VII is granted.

## VI.    Count VIII

The Zale and KB Defendants finally contend that Plaintiff has no cause of action for civil conspiracy because he cannot maintain any of his three underlying tort claims (restraint of trade under the Sherman Act, tortious interference with prospective economic advantage, or malicious injury to property rights). (Zale/KB Mem., at 6.) In light of the court's determination that Plaintiff has in fact stated a claim for tortious interference with prospective economic advantage, the Zale and KB Defendants' motion to dismiss Count VIII on this basis is denied.

The Village Defendants insist that the civil conspiracy claim against them must nonetheless

25

be dismissed because they are immune from suit under the Illinois Tort Immunity Act, 745 ILCS 10/1-101 *et seq.* The Tort Immunity Act is designed to "protect local public entities from liability arising out of the operations of government." *Mazin v. Chicago White Sox, Ltd.*, 832 N.E.2d 827, 832 (1st Dist. 2005). Under the Act, a public entity is not liable "for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." 745 ILCS 10/2-103. In addition, a public entity

> is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization where the entity or its employee is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked.

745 ILCS 10/2-104. Public employees are similarly immune from liability for such actions under §§ 2-205 and 2-206. 745 ILCS 10/2-205, 2-206.

The Village Defendants argue that Plaintiff's damages "are all an integral part of and arise out of the annexation of the Zale property," including the relocation of Savage Road. (Village Mem., at 6.) According to the Village Defendants, those acts "arise out of the issuance of an 'approval' within the meaning of Section 2-104 and Section 2-206 of the Act" – i.e., the Village's approval of the annexation plan. (*Id.*; Village Reply, at 6.)[10] Plaintiff first responds that immunity under the Act constitutes an affirmative defense that cannot be disposed of on a motion to dismiss. (Pl. Resp., at 12.) Though this is generally true, "[t]he exception occurs where . . . the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense . . . ." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

Plaintiff next argues that nothing in the Tort Immunity Act covers the conduct or damages occasioned when "the Village Defendants agreed to allow a private developer, Zale, to unlawfully remove Savage Road." (Pl. Resp., at 12.) In Plaintiff's view, such an allegation does not amount

---

[10]     The Reply Memorandum of Village of Lindenhurst Defendants in Support of their Motion to Dismiss the Plaintiff's Amended Complaint is cited as "Village Reply, at __."

to a claim of injury either by the "issuance" of any "permit, license, certificate, approval, order or similar authorization," or by "the adoption of, or failure to adopt, an enactment." (*Id.*) The Illinois Supreme Court rejected a similar argument in *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 752 N.E.2d 1090 (2001). In that case, CDG Enterprises petitioned the Village of Bloomingdale to rezone property CDG had contracted to purchase. The Village denied the petition, allegedly to further its own plan to develop an adjacent parcel as a golf course. When the Village sued to recover for the services it rendered in reviewing CDG's petition, CDG counterclaimed, alleging tortious interference with business expectancy. *Id.* at 485-86, 752 N.E.2d at 1093-94. Reversing dismissal of that claim, the appellate court characterized it as a challenge to the "corrupt misuse of the Village's power to steal away the expected benefits of [CDG's] plans to develop the property." *Id.*, 752 N.E.2d at 1099. In other words, the "gravamen" of CDG's claim was the "Village's theft of [CDG's] opportunity." *Id.* The Illinois Supreme Court reversed that determination, however, noting that "[t]he Village's denial of CDG's rezoning petition is precisely what the legislature intended to immunize such entities from." *Id.* The court was not persuaded by CDG's argument that "it really challenges the *process* by which the Village denied its petition, not the mere fact that it was denied." *Id.* As the court explained,

> whether the Village denied the petition through an "abuse of official process and power," through "corrupt and malicious misuse of power," or for "corrupt or malicious motives," as CDG claims, is wholly immaterial to CDG's claim in tort . . . because section 2-104 contains no reference to intent whatsoever and . . . it certainly does not contain an exception for "willful and wanton misconduct" or "corrupt or malicious motives."

*Id.* at 495-96, 752 N.E.2d at 1099.

In this case, the Village's decision to approve the annexation agreement, including the relocation of Savage Road, is exactly the type of action the Tort Immunity Act is designed to protect. Plaintiff offers nothing to suggest that approving an annexation agreement is a ministerial, as opposed to discretionary task. Indeed, the Act expressly extends immunity to injuries caused

by the refusal to deny any approval or other similar authorization. 745 ILCS 10/2-104. *See Village of Bloomingdale*, 196 Ill. 2d at 497, 752 N.E.2d at 1100 ("section 2-104 plainly grants immunity for injury caused by the 'denial [of] any *permit*' and is, therefore, controlling.") (emphasis in original). *See also Kevin's Towing, Inc. v. Thomas*, 351 Ill. App. 3d 540, 545, 814 N.E.2d 1003, 1008 (2d Dist. 2004) (immunity does not require showing that the public authority acted in good faith). The Village Defendants' motion to dismiss Count VIII is granted.[11]

### CONCLUSION

For the reasons stated above, the Zale and KB Defendants' motion to dismiss (Docket No. 38) is granted with respect to Counts I, IV, V, and VII, but denied with respect to Counts VI and VIII. The Village Defendants' motion to dismiss Counts I, IV, and VIII (Docket No. 34) is granted.

ENTER:

Dated:  September 16, 2005

_Rebecca R. Pallmeyer_
REBECCA R. PALLMEYER
United States District Judge

---

[11]    Having determined that the Village Defendants are immune from liability under the Tort Immunity Act, the court need not address whether they are also entitled to legislative immunity. (Village Mem., at 7.) *See Biblia Abierta v. Banks*, 129 F.3d 899, 903 (7th Cir. 1997) ("The doctrine of absolute legislative immunity recognizes that when acting collectively to pursue a view of the public good through legislation, legislators must be free to represent their constituents 'without fear of outside interference' that would result in private lawsuits.")